LEWIS, RECEIVER, *v.* FIDELITY & DEPOSIT CO. OF MARYLAND.

No. 802. Argued May 4, 1934.—Decided June 4, 1934.

*Messrs. Wallace Miller* and *George P. Barse,* with whom *Messrs. Samuel H. Wiley, John F. Anderson,* and *F. G. Awalt* were on the brief, for petitioner.

*Mr. Max F. Goldstein,* with whom *Mr. Arthur G. Powell* was on the brief, for respondent.

By leave of Court, *Messrs. F. G. Awalt* and *George P. Barse* filed a brief on behalf of the Comptroller of the Currency, as *amicus curiae.*

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Under statutes of Georgia, in force since 1879, a bank, state or national, may be appointed depository of state funds. To qualify it must give a bond for the faithful performance of its duty. A bond with surety creates a lien on all the bank's assets, both those held at the time of the execution of the bond and those subsequently acquired.[1]

---

[1] " The bond to be made by the State depositories may be a personal bond or may be made by a deposit with the State treasurer of United States bonds or Georgia State bonds, or either one or both of said methods." § 1256, Code of Georgia (1910). Section 1252 provides that the depository bond shall have " the same binding force and effect as the bond required by law to be given by State treasurers, and, in case of default shall be enforced in like manner." Section 218 of the Code relating to the treasurer's bond provides that " a lien is hereby created in favor of the State upon the property of the treasurer to the amount of said bond, and upon the property of the securities upon his said bond to the amount for which they may be severally liable, from the date of the execution thereof." The

In July, 1928, the Governor of Georgia appointed The Hancock National Bank of Sparta, Georgia, a state depository for the term of four years. It gave a bond with the Fidelity and Deposit Company of Maryland as surety in the sum of $10,000 for the faithful discharge of its duties. From time to time thereafter, until May 23, 1932, the tax collector of Hancock County deposited in the bank moneys collected on account of state taxes. On that day the Comptroller of the Currency declared the bank insolvent and appointed a receiver for whom the petitioner, John C. Lewis, was later substituted. The amount of state funds then on deposit was $6,157.41. This sum, and the accrued interest, the company paid to the State and received an assignment of its rights arising out of the deposit. Then, the company brought in the federal court for the Middle District of Georgia this suit in equity against the receiver to enforce a lien for the amount upon all the assets in his hands, claiming priority according to the date of the bond.

The District Court, after denying a motion to dismiss, heard the cause substantially upon agreed facts. It ruled that the company was entitled to the rights of the State by subrogation and by transfer; held that neither the State nor the company was entitled to a lien or to preferential treatment; and allowed the claim as one entitled merely to a *pro rata* dividend. The Circuit Court of Appeals for the Fifth Circuit reversed the judgment and remanded the cause for further proceedings, holding that

Supreme Court of Georgia held, in cases involving state banks, that under these statutes the State acquires a lien on all the assets of a depository bank, both those at the time of the execution of the bond and those subsequently acquired. See *Seay* v. *Bank of Rome,* 66 Ga. 609; *Colquitt* v. *Simpson,* 72 Ga. 501; *Simpson* v. *Mathis,* 79 Ga. 159; 3 S.E. 646. Compare *State* v. *Brobston,* 94 Ga. 95; 21 S.E. 146. *Standard Accident Ins. Co.* v. *Luther Williams Bank & Trust Co.,* 45 Ga. App. 831; 166 S.E. 260.

the asserted lien was valid, subsisting in favor of the company, and entitled to the priority claimed. 67 F. (2d) 961. This Court granted certiorari.

That court, following *Pottorff* v. *El Paso-Hudspeth Road District*, 62 F. (2d) 498, ruled, as matter of federal law, that national banks had under National Bank Act as enacted in 1864 power to pledge assets to secure public deposits. It ruled as matter of state law that the lien is a contractual one arising, not *proprio vigore* by reason of the statutes, but by contract of the bank as an incident of giving a personal bond; that these statutes apply to both state and national banks, and the scope of the lien is the same in respect to both; declared, in describing its character, that from the date of the bond the lien attaches to all property real and personal then owned or thereafter acquired; that a grantee of real estate having constructive notice would take subject to the lien; that as to money, bonds, stocks, notes, drafts and other choses in action, the lien of the State is inferior to the rights of third persons who receive the property *bona fide* in the ordinary course of business prior to insolvency or sequestration; and that the lien is inferior even to the right of depositors to set-off against their own indebtedness that of the bank to them.

The court took judicial notice of the fact that throughout the fifty-three years since the enactment of the law both national and state banks had acted as state depositories; that the lien had been enforced against money and choses in action when captured by a receivership, but had never been asserted as to commercial assets transferred in due course of business; that the existence of the lien had presented no obstacle to the ordinary operations of the banking business or interfered in any way with the performance by national banks of their federal functions; and that a bank's appointment as state depository is customarily advertised and accepted as evi-

dence of soundness and credit. Compare *In re Blalock,* 31 F. (2d) 612.

In *Texas & Pacific Ry. Co.* v. *Pottorff,* 291 U.S. 245, and *Marion* v. *Sneeden,* 291 U.S. 262, decided after the entry of the judgment below, we held that a national bank had, prior to the Act of June 25, 1930, no power to make any pledge to secure deposits except the federal deposits specifically provided for by Acts of Congress. It follows that, in 1928, no lien arose when the bank was appointed depository; and that the judgment of the Circuit Court of Appeals must be reversed unless the Act of June 25, 1930, c. 604, 46 Stat. 809, authorizes a national bank to give as security a general lien of the character prescribed by the Georgia statutes.

That Act provides:

"Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

*First.* The receiver contends that the Act of 1930 should be construed as authorizing merely a pledge of specific assets to secure public deposits; and that the giving of a general lien upon the bank's assets is still *ultra vires.* The language of the Act is broad enough to authorize giving a general lien on present and future assets, wherever banks organized under the laws of the State have such power; and it should be given that construction. For the main purpose of the 1930 Act was to equalize the position of national and state banks; and without such power national banks would not in Georgia be upon an equality with state banks in competing for deposits. The policy of equalization was adopted in the National Bank Act

of 1864, and has ever since been applied, in the provision concerning taxation.[2] In amendments to that Act and in the Federal Reserve Act and amendments thereto the policy is expressed in provisions conferring power to establish branches;[3] in those conferring power to act as fiduciary;[4] in those concerning interest on deposits;[5] and in those concerning capitalization.[6] It appears also to have been of some influence in securing the grant in 1913 of the power to loan on mortgage.[7] Compare *Fidelity & Deposit Co.* v. *Kokrda,* 66 F. (2d) 641, 642.

*Second.* The receiver insists that, even if the Act of 1930 authorizes the giving of a general lien, the lien here asserted must fail because there are provisions in the Georgia law inconsistent with the National Bank Act

---

[2]Acts of June 3, 1864, c. 106, § 41, 13 Stat. 99, 111; Feb. 10, 1868, c. 7, 15 Stat. 34; R.S. § 5219; Mar. 25, 1926, c. 88, 44 Stat. 223. See *Van Allen* v. *Assessors,* 3 Wall. 573; *Mercantile Bank* v. *New York,* 121 U.S. 138; *First National Bank* v. *Hartford,* 273 U.S. 548.

[3]Acts of Feb. 25, 1927, c. 191, § 7, 44 Stat. 1224, 1228; June 16, 1933, c. 89, § 23, 48 Stat. 162, 189. See 36 Op. Atty. Gen. 116, 344.

[4]Acts of Dec. 23, 1913, c. 6, § 11(k), 38 Stat. 251, 262; Sept. 26, 1918, c. 177, § 2, 40 Stat. 967, 968; compare June 16, 1933, c. 89, § 24(a, b), 48 Stat. 162, 190. See *First National Bank* v. *Fellows,* 244 U.S. 416; *Burnes National Bank* v. *Duncan,* 265 U.S. 17.

[5]Acts Feb. 25, 1927, c. 191, § 16, 44 Stat. 1224, 1232 (to pay no greater interest on time and savings deposits than state banks); and note in particular June 16, 1933, c. 89, § 11(b), 48 Stat. 162, 181 in which national banks are forbidden to pay interest on demand deposits except on deposits of state, county, etc., where state law demands it.

[6]Act of Feb. 25, 1927, c. 191, § 4, 44 Stat. 1224, 1227.

[7]Acts of Dec. 23, 1913, c. 6, § 24, 38 Stat. 251, 273 (see 50 Cong. Rec. 4819; 51 Cong. Rec. 1189); Sept. 7, 1916, c. 461, 39 Stat. 752, 754 (64th Cong., 1st Sess., see Report No. 481, p. 14); Feb. 25, 1927, c. 191, § 16, 44 Stat. 1224, 1232. See *First National Bank* v. *Anderson,* 269 U.S. 341, 354; *First National Bank* v. *Hartford,* 273 U.S. 548, 558.

and because obligations are imposed upon state depositories with which no national bank may comply.

■ Attention is called specifically to the terms of the statutory bond which is conditioned " for the faithful performance of all such duties as shall be required " of the depository " by the General Assembly or the laws of this State." The argument is that a national bank is an instrumentality of the United States and cannot subject itself by contract to the laws of a State. But a national bank is subject to state law unless that law interferes with the purposes of its creation, or destroys its efficiency, or is in conflict with some paramount federal law. *National Bank* v. *Commonwealth,* 9 Wall. 353, 362; *McClellan* v. *Chipman,* 164 U.S. 347, 356; *First National Bank* v. *Missouri,* 263 U.S. 640, 656. What obligations to the State the bank assumes may be defined by the law of that State. It is quite possible that the legislature might attempt to impose, under the conditions of the bond, a duty which the bank would be without authority to undertake; and to that extent the contract would be unenforceable. But it is not shown that the obligations as now defined by the courts of Georgia are contrary to anything in the National Bank Act. Moreover, the state court, which would be the controlling authority on the question, might decide that the failure of part of the consideration to be given would not invalidate the appointment.

■ It is urged that acceptance of the appointment as state depository is incompatible with the functions of a national bank, because under § 224 of the Georgia Code it has been held that the Governor may issue a *fieri facias* against the depository bank for the amount due to the State, whereas, Revised Statutes, § 5242, provides that " no attachment, injunction or execution, shall be issued against such association or its property before final judg-

ment in any suit, action or proceeding, in any state, county or municipal court." [8] Assuming, without deciding, that there is such conflict, it is not material here. Section 224 of the Code provides merely a method of enforcing the bond which has not been used here, and hence against which there is at present no occasion for complaint.

■ It is contended that the lower court erred in its rulings on the Georgia law; that under the state statutes, properly construed, the lien attaches to all kinds of property from the date of the bond; that it applies to real estate and other tangible property, to money, bonds, stocks, notes, drafts and other choses in action then owned or thereafter acquired by the bank, and that it is not defeated even by a *bona fide* sale or other disposition of such property in the ordinary course of business; that, consequently, the general lien would present an insuperable obstacle to the bank's serving the public in its ordinary business operations; that the bank could not sell the property it was authorized to acquire, for no one would take it subject to the lien; that the general lien would prevent the pledge of specific bonds or other securities required in order to secure the deposits of the United States and federal agencies pursuant to provisions of the National Bank Act as amended; [9] and that it would prevent the pledge of specific security required to authorize the issue of circulating notes. [10] The lower court took judicial notice of the fact that for more than half a century the general lien described has been in force, and has not interfered with the performance by banks of their duties to the public; and that national banks while serving as depositories have not, so far as appears, ever been

[8] Act of March 3, 1873, c. 269, § 2, 17 Stat. 603; R.S. § 5242.

[9] Act of June 3, 1864, c. 106, § 45, 13 Stat. 99, 113.

[10] Act of March 14, 1900, c. 41, § 12, 31 Stat. 45, 49.

confronted with a conflict between their duties to the State and to the United States. The reasons given by that court for its conclusions as to the operation and effect of the lien under the law of Georgia are set forth fully and persuasively in the opinion of the Circuit Court of Appeals. We cannot say that it erred in the conclusions reached either as to the state law, or as to the facts. Compare *Marion* v. *Sneeden,* 291 U.S. 262, 270–271.

■ The receiver contends that the lien, if limited in its operation upon commercial assèts to such moneys, stocks, bonds, notes, drafts and other choses in action as are captured by a receivership, is not a true security at all; that if so limited the alleged lien would, in the event of insolvency, be legally a preference; that to give it effect would conflict with the policy expressed in § 50 of the National Bank Act [11] which forbids preferences made in view of insolvency; and that Congress cannot be assumed to have sanctioned a transaction which though in form a security is in essence a preference.

Sections 50 and 52 do not prohibit liens given prior to insolvency and not in contemplation thereof, whether they arise from express agreements, or are implied from the nature of the dealings between parties, or arise by operation of law. *Scott* v. *Armstrong,* 146 U.S. 499, 510; *Earle* v. *Pennsylvania,* 178 U.S. 449, 454. The lien here asserted arises out of an agreement executed at a time when there was no question of insolvency; nor is it restricted in its operation to the event of insolvency. It may be exercised by execution or otherwise whenever the bank refuses to pay. It resembles the lien which is enforced when seizure is made by the creditor within four months of bankruptcy, of property claimed under an after-acquired property clause of a mortgage; *Thompson* v. *Fairbanks,* 196 U.S. 516; *Humphrey* v. *Tatman,* 198

---

[11]Act of June 3, 1864, c. 106, § 50, 13 Stat. 99, 114; R.S. § 5236.

U.S. 91.[12]    It resembles also those cases where, under the common law of distress or under a statutory lien, described by the courts as " inchoate " or " dormant," a landlord, within four months of bankruptcy, seizing or levying upon whatever property was on the tenant's premises, was held to have a valid lien.   *Henderson* v. *Mayer*, 225 U.S. 631; *Richmond* v. *Bird*, 249 U.S. 174.    Compare *Minnich* v. *Gardner*, *ante*, p. 48.   The case at bar is unlike *Davis* v. *Elmira Savings Bank*, 161 U.S. 275, relied upon by the receiver, where a New York statute dealing with the administration of insolvent banks provided that in the event of insolvency the deposits of a savings bank would be entitled to a preference.

■ The receiver contends that, under a proper interpretation of the state depository statute, no lien whatever is intended or arises when a national bank gives a bond to secure state deposits, because the bond required of a national bank is more onerous than that required of a state bank.

The bond of the national bank must be double the amount of the deposit; of the state bank only equal to it. The lien is security for the bond, not the deposit; thus in the case of a national bank, if the provision were applicable, the lien would be twice the amount of the deposit. As the court below noted, the double bond may have been thought necessary because the State has not the power to examine national banks.   But whatever the occasion for the difference, it does not appear to conflict with or cloud the clear statement of the statute attaching the lien to depository bonds as such and without qualifications.   The ultimate decision of this question is for the Supreme Court of Georgia but until it decides otherwise

---

[12] Compare *In re Ball*, 123 Fed. 164; *In re Rogers*, 132 Fed. 560; *Wood* v. *U.S. Fidelity & Guaranty Co.*, 143 Fed. 424; *In re Glover Specialties Co.*, 18 F. (2d) 314; *In re Riggi Bros. Co.*, 42 F. (2d) 174.

we see no reason for not accepting the holding of the court below as correct.

*Third.* The receiver contends that even if national banks are authorized under the 1930 Act to give a general lien upon their assets of the character described by the Circuit Court of Appeals, the judgment should be reversed because the bond antedated the Act. It appears that the balance on hand June 25, 1930, was withdrawn soon thereafter; that between June 25, 1930 and the appointment of the receiver, May 23, 1932, deposits were regularly made aggregating a large sum; that from time to time checks were drawn against these deposits; and that all of the balance in bank when the receiver was appointed represented deposits made after the passage of the Act.[13] The appointment of the bank as depository in 1928 and the bond were to cover a period of four years. Though the lien was in form security for the bond, the extent of liability was to be measured by the unpaid balance. Thus, the transaction was not completed in 1928; it was contemplated that there would be continuous dealings between the parties for four years. In fact, the relation continued until the appointment of the receiver. Throughout the whole period the parties intended that the lien should be operative and supposed that it was. The appointment was within the power of the State to confer and of the bank to accept, but by reason of the paramount federal law one of the anticipated incidents of the relation, the lien, could not arise. When that obstacle was removed by the Act of June 25, 1930, the original agreement could as to the future be given the effect intended by the parties; and the lien became operative as to deposits thereafter made and is entitled to priority from

---

[13] The facts concerning the dates of the deposits and the amounts were supplied by counsel for the Comptroller of the Currency who joined with counsel for petitioner in briefs and argument.

the date of the Act. A statute is not retroactive merely because it draws upon antecedent facts for its operation. Compare *Cox* v. *Hart,* 260 U.S. 427, 435; *Ewell* v. *Daggs,* 108 U.S. 143; *Petterson* v. *Berry,* 125 Fed. 902; *Hartford Fire Ins. Co.* v. *Chicago, M. & St. P. Ry. Co.,* 62 Fed. 904, 910; *Rosenplanter* v. *Provident Savings Society,* 96 Fed. 721. It was not necessary to go through the form of executing a new bond. Compare *Jones* v. *Guaranty & Indemnity Co.,* 101 U.S. 622, 627. We have no occasion to consider whether the Act of June 25, 1930, would have validated the lien also in respect to deposits made before that date. Compare *Gross* v. *United States Mortgage Co.,* 108 U.S. 477, 488; *West Side Belt R. Co.* v. *Pittsburgh Construction Co.,* 219 U.S. 92; *Charlotte Harbor & Northern Ry. Co.* v. *Welles,* 260 U.S. 8.

*Affirmed.*