### SPRADLIN v. ROYAL MFG. CO.

No. 3735.

Circuit Court of Appeals, Fourth Circuit.

Nov. 19, 1934.

John J. Ingle, of Winston-Salem, N. C., and John H. Folger, of Mt. Airy, N. C., for appellant.

E. C. Bivens, of Mt. Airy, N. C., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a decree holding a claim of the Royal Manufacturing Company for $3,483.73 to be a lien on the assets of the failed Elkin National Bank in hands of its receiver. The claim arose out of a draft on the Chatham Manufacturing Company which was sent to the bank for collection. The company last named paid the draft by a check drawn against its deposit account with the bank, and the bank remitted for the collection by draft on one of its correspondents, but failed before this draft could be paid. There was, of course, no augmentation of the assets of the bank as a result of the collection, but merely a shifting of credits, and consequently no basis for the declaration of a trust. Lifsey v. Goodyear Tire & Rubber Co. (C. C.

A. 4th) 67 F.(2d) 82, 83; Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F.(2d) 993, 995; Larabee Flour Mills v. First Nat. Bank (C. C. A. 8th) 13 F.(2d) 330, 331. The learned judge below was of opinion, however, that the assets of the bank were subjected to a lien to the amount of the collection by reason of the proviso appearing in section 218 (c) (14) of the North Carolina Code of 1927.

Section 218 (c) of the North Carolina Code is composed of twenty-three subsections all of which relate to the liquidation of state banks. Subsection 14 thereof, which contains the proviso in question, is as follows:

"(14) *Declaration of Dividends; Order of Preference in Distribution.*—At any time after the expiration of the date fixed by the Chief State Bank Examiner, or the duly appointed agent, for the presentation of claims against the bank, and from time to time thereafter, the Corporation Commission, out of the funds in its hands, after the payment of expenses and priorities, may declare and pay dividends to the depositors and other creditors of such bank in the order now or hereafter provided by law; and a dividend shall be declared when and as often as the funds on hand subject to the payment of dividends shall be sufficient to pay ten (10) per centum of all claims entitled to share in such dividends. In paying dividends and calculating the same, all disputed claims and deposits shall be taken into account but no dividend shall be paid upon such disputed claims and deposits until the same shall have been finally determined. The following shall be the order and preference in the distribution of the assets of any bank liquidated hereunder: (1) Taxes and fees due the Corporation Commission for examination or other services; (2) wages and salaries due officers and employees of the bank, for a period of not more than four months; (3) expenses of liquidation; (4) certified checks and cashier's checks in the hands of a third party as a holder for value and amounts due on collections made and unremitted for or for which final actual payment has not been made by the bank; (5) amounts due creditors other than stockholders. The word 'asset' used herein shall not be deemed to include bailments or other property to which such bank has no title. Provided, that when any bank, or any officer, clerk, or agent thereof, receives by mail, express or otherwise, a check, bill of exchange, order to remit, note, or draft for collection, with request that remittance be made therefor, the charging of such item to the account of the drawer, acceptor, indorser, or maker thereof, or collecting any such item from any bank or other party, and failing to remit therefor, or the nonpayment of a check sent in payment therefor, shall create a lien in favor of the owner of such item on the assets of such bank making the collection, and shall attach from the date of the charge, entry or collection of any such funds. A statement of all dividends paid shall be filed in the office of the clerk of the Superior Court in the pending action, and said statements shall show the expenses deducted and the disputed claims and deposits considered in determining said dividend."

It is clear, we think, that even if this proviso be construed as having relation to solvent banks as distinguished from those in liquidation, it cannot affect national banks. It has been held that these banks have no power to pledge their assets to secure a private deposit (Texas & Pac. Ry. Co. v. Pottorff, 291 U. S. 245, 253, 54 S. Ct. 416, 78 L. Ed. 777); and one of the reasons for this holding is that to permit such pledge would be inconsistent with many provisions of the national bank act which are designed to insure a ratable distribution of assets among creditors. The same reasoning would forbid the creation of a lien on assets as security for funds collected. And, of course, if the creation of such a lien be beyond the powers of the bank, it could not be created by act of the state Legislature; for the Legislature could not provide that action on the part of the bank should give rise to a lien which the bank, by reason of the limitations imposed upon it by act of Congress, was powerless to create.

But it is clear that the statute in question was not intended to have application to solvent banks. Quite apart from the fact that it is a proviso to one of the subsections of a statute dealing with the liquidation of insolvent banks, it appears that it can have no practical application except in connection with their liquidation. The lien created, although it is to attach from the date of the charge, entry or collection, arises only upon "failing to remit" or "the non-payment of a check sent in payment"; and it is manifest that a solvent bank will not fail to remit collections or permit a check sent in payment of a collection to remain unpaid. It is only in case of banks which have failed, therefore, that the statute can have any practical application; and the lien which it creates is of such a character that it can be enforced only by a liquidation of the bank. See Lewis v. Fidelity & Deposit Co., 292 U. S. 559, at pages 563 and 567, 54 S. Ct. 848, 78 L. Ed. 1425, 92 A. L. R. 794. The statute must be

construed, therefore, as relating to the distribution of assets in the hands of banks which have failed; for "in whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect." Collins v. New Hampshire, 171 U. S. 30, 34, 18 S. Ct. 768, 43 L. Ed. 60; Morgan's Louisiana & T. R. & S. S. Co. v. Board of Health of Louisiana, 118 U. S. 455, 462, 6 S. Ct. 1114, 30 L. Ed. 237; Henderson et al. v. Mayor of New York, 92 U. S. 259, 268, 23 L. Ed. 543. So construed, it can have no application to the assets of national banks; for the national banking act provides how the assets of insolvent national banks shall be distributed. 12 USCA § 194. And it is well settled that state statutes cannot affect this distribution. Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700; Easton v. State of Iowa, 188 U. S. 220, 23 S. Ct. 288, 47 L. Ed. 452; Old Company's Lehigh v. Meeker (C. C. A. 2d) 71 F.(2d) 280; Fiman v. South Dakota (C. C. A. 8th) 29 F.(2d) 776, 777; First Nat. Bank of Chicago v. Selden (C. C. A. 7th) 120 F. 212, 62 L. R. A. 559.

The case of Lewis v. Fidelity & Deposit Co., 292 U. S. 559, relied upon by appellee, is in reality an authority against its position. In that case a statute of Georgia, creating a general lien on the assets of banks as security for deposits of state funds, was held to have application to a national bank merely because the Act of Congress of June 25, 1930, c. 604, 46 Stat. 809, 12 USCA § 90, authorized a national bank to give security for a deposit of public funds of the same kind as authorized by state law for state banking institutions. The Supreme Court said that no lien under the Georgia statute arose in 1928 when the deposit was made, and that the judgment of the court below sustaining the lien would have been reversed but for the enactment by Congress of the act of 1930. See page 564 of 292 U. S., 54 S. Ct. 848. Here there is no act of Congress authorizing the creation of a lien on the assets of a national bank as security for collections; and the act of the North Carolina Legislature can no more create a lien on the assets of a national bank than could the Georgia statute without the aid of the act of 1930.

■ We do not interpret the proviso as having been intended to make the collecting bank the agent of the holder of the item sent for collection, which was the purpose of the sections of the uniform bank collection code under consideration in National Bank of America v. United States F. & G. Co. (C. C. A.

7th) 71 F.(2d) 618, 619, and Old Company's Lehigh v. Meeker, supra. Nevertheless, under the rule recognized in this circuit, the bank here was the agent of the owner of the draft for the purpose of making the collection and remitting the proceeds. Ellerbe v. Studebaker Corporation (C. C. A. 4th) 21 F.(2d) 993, 994; Lifsey v. Goodyear Tire & Rubber Co. (C. C. A. 4th) 67 F.(2d) 82, 83. But under the authority of these cases, appellee is not entitled to have a trust declared or to receive preferential payment from the assets in the hands of the receiver, since it has failed to show that these assets have been augmented as a result of the collections.

For the reasons stated, the decree appealed from will be reversed.

Reversed.