### ROSS v. KNOTT et al.
### No. 8112.

Circuit Court of Appeals, Fifth Circuit.
Jan. 22, 1937.

Rehearing Denied Feb. 5, 1937.

J. Turner Butler, of Jacksonville, Fla., for appellant.

Cary D. Landis, H. E. Carter, and James B. Watson, all of Tallahassee, Fla., and T. J. Swanson, of Perry, Fla., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit, by the receiver of a failed national bank, was to cancel a contract it had made pledging securities for public deposits, to wit, bond funds of Taylor county, Fla., to recover the pledged securities, and to get back moneys paid the depositor in the course of liquidation as proceeds from some of the securities. The petition alleged that the agreement for the pledge was made and the securities were pledged before the passage of the Enabling Act of June 25, 1930,[1] section 90, title 12 U.S.C.A., and that the deposits had remained in the bank without change in either the agreement, the securities, or the deposits after its passage until in October, when the bank failed, and the receiver was appointed. It was alleged too that under a misconception as to the law the pledge agreement had been treated by the receiver as valid and collections from the pledged securities had been paid over to the county until the bringing of this suit. It was not alleged that the bank was insolvent or in a failing condition on June 25th, or, indeed, until some time in October, when it failed.

The District Judge thought the Enabling Act effective to validate the arrangement from and after its passage. He thought the matter stood in law just as it would have stood if there had been a new agreement, or new deposits had been made after the passage of the act. He did not think it material that no change was made in the agreement, the securities, or the deposits. He decided the case against the receiver on the demurrer. This appeal followed. Those on the county's side contended below, they contend here, as a minor argument, that the acts of the receiver in accepting the pledge agreement as valid, and in proceeding on that assumption for several years, gave the agreement a new strength and validity, if it had none before. Their real contention, however, is

that the District Judge was right in giving validating effect to the act as to the continuance of the deposits after its passage, and on this they take firm stand. We think the position well taken, and that the judgment should be affirmed on that ground. Counsel for appellant and appellees extensively present and discuss the many decisions on the power of national banks to give pledges in security for deposits. Each insists that their effect is to support the view he advances. We do not think it necessary to enter into any extended discussion or analysis of these cases, for none of them is exactly in point, and only one, Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794, is at all controlling. As to this case, each finds in it something of comfort to himself. Appellant insists that its affirmance of the judgment, upholding the security, was made to turn on the fact that, though the agreement for security antedated the June, 1930, act, all of the deposits then existing were afterwards drawn down and new deposits made. Appellees insist that, while these facts were commented upon in the opinion, it was only because they were the facts of that case, that the court expressly reserved opinion upon the validating effect of the act under other circumstances. They insist that continuing deposits as the deposits in this case were, by being allowed to remain in the bank after June 25th, are to be considered as made after that date just as much as if they had been drawn down and redeposited. They insist, in short, that the decision in the Lewis Case, that an agreement for security was valid as to deposits made after, on an agreement for security made before, June 25th, is authority for the position they take here, that deposits secured by pledge agreement made before that date are, if allowed to remain in the bank after it, validly secured by the agreement, the condition of their being placed there and the continuing condition of their being allowed to remain. In Florida it has long been the law that state banks may give security for public deposits. First American Bank & Trust Co. v. Town of Palm Beach, 96 Fla. 247, 117 So. 900, 65 A.L.R. 1398. For years

[1] "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safekeeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

before the 1930 Enabling Amendment was passed, it had been the practice of national banks in Florida in competition with state banks to give security for public deposits. When the contract for security was made in this case, it was made in good faith, and without time limit, as a continuing contract, both parties to it believing that it was a reasonable one and that the bank was within its corporate powers in making it. If the contract had not been made, the county would not have deposited its funds in the bank. If it had not been understood to be a continuing contract, the funds on deposit would not have been allowed to remain there. Invalid then though the security was in law for want of granted power before the passage of the Enabling Act, it became, we think, valid in law, after it was passed, as to all deposits covered by it without distinction between deposits newly made and those remaining there from an earlier depositing. The statute certainly does not in terms, we think it does not in effect, distinguish between agreements or deposits made before and those made after its enactment. The statute is an act of enablement. Settling a troublesome question about and curing a former deficiency in power, it enabled national banks to compete with state banks for the deposit of public moneys by authorizing them to secure such deposits where, by state law, state banks could secure them.

When the purpose of the statute is considered in the light of the long-continued practice of national banks, known to and recognized by the Comptroller, of giving security for public deposits, and the desire of Congress to authorize this practice,[2] it would, we think, be an unreasonable construction of the act to hold that Congress intended by it to provide that, in order to be valid, all existing arrangements for security must be cancelled out and new ones entered upon. We think the contrary intent manifest. We know from the history of the act that its purpose, we think its effect, was to fully enable national banks to compete with state banks. We think that from and after its passage, as to all public funds on deposit in national banks in states where state banks could give security, whether deposited before or after the passage of the act, arrangements made before its passage for their security, equally with those made afterward, are valid.

Judgment affirmed.

---

[2] The proceedings in Senate and House when the act was passed show this clearly:

"In Senate Report No. 67, 71st Cong. 2nd Sess., the committee based its favorable report upon a letter from the Attorney General of Minnesota, reading in part as follows: 'The United States district court for this district has held that it may not thus pledge its assets to secure private deposits and the trend of authority generally seems to be to the effect that a bank may not in any case pledge its assets to secure a deposit unless authorized by law so to do.

" 'The National banks of this State have pledged with the State and the various sub-divisions thereof millions of dollars in Government and other bonds as security for public deposits. They are anxious to be permitted to do so, and we are willing that they should. Under the law as it now stands we may be taking a chance in accepting such pledges from the national banks, and we should like to have the chance removed by legislation in Congress which will specifically authorize such pledges by national banks'." * * *

"From House Report No. 1657, 71st Cong. 2nd, Sess., it appears that the committee reported favorably upon the bill (S. 486) because of a request from the acting Secretary of the Treasury reading in part as follows: 'While the office of the Comptroller of the currency has consistently taken the position that national banks have the right to give security for the safekeeping and prompt payment of public moneys of the State or political subdivision thereof deposited with such national banking associations, several recent decisions have thrown some doubt on this question with the result that in some States the State banks may secure the public deposits but the officers of the State are in doubt about depositing with the national banks in the absence of any specific law by Congress on the subject. It would be extremely helpful, therefore, if it is possible for your committee to report out, and the House pass, S. 486'."