### HOOD v. HARDESTY. *

### No. 4199.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1938.

*Writ of certiorari denied 58 S.Ct. 765, 82 L.Ed. —.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

James M. Guiher, of Clarksburg, W. Va., and Herschel H. Rose, of Fairmont, W. Va. (Steptoe & Johnson, of Clarksburg, W. Va., on the brief), for appellant.

D. H. Hill Arnold, of Elkins, W. Va., for appellee.

PARKER, Circuit Judge.

This is a suit by a receiver of a national bank, to whom we shall hereafter refer as the plaintiff, to recover from the receiver of a state bank, to whom we shall refer as defendant, the proceeds of certain bonds pledged by the national bank to secure a deposit of funds made by the state bank receiver. It appears that the bonds were pledged in 1931. A portion of them were returned to the bank on the reduction of the deposit account in 1932. Following the passage by the West Virginia Legislature of the Act of July 28, 1932, Acts 1932, Ex. Sess., c. 7, hereafter quoted, the national bank executed a form of bond pledging the bonds already held by defendant so as to conform to this statute, and the pledge as thus consummated had the approval of the Comptroller of the Currency and the Commissioner of Banking of West Virginia. Following the insolvency of the national bank, the bonds which had been pledged were sold with the approval of the plaintiff; and from the proceeds of the sale the deposit of defendant was paid. This suit was subsequently instituted to recover from defendant the proceeds of the pledged bonds thus received by him, less the dividends to which he would have been entitled on his deposit account; and, from a decree for plaintiff in accordance with the prayer of the bill, the defendant has appealed.

Three questions are presented by the appeal before us: (1) Whether the pledge in question can be upheld as a pledge to secure a deposit of public money of a state within the meaning of the Act of June 25, 1930, 12 U.S.C.A. § 90; (2) if not, whether the plaintiff is precluded by the voluntary nature of the payment from seeking recovery of the proceeds of the bonds used with his consent in the liquidation of the deposit balance; and (3) whether plaintiff is precluded from recovery by failure to

trace the proceeds of the bonds into funds in the hands of the defendant. We think that all of these questions must be answered in the negative.

The contention of the defendant on the first question is that in view of the provisions of the West Virginia Act of July 28, 1932, the deposit of plaintiff should be treated as a deposit of public money of the state. The portion of the West Virginia statute relied on is as follows: "A bank or trust company may pledge, hypothecate, deliver or deposit securities to guarantee deposits of the United States, state of West Virginia, a county, district, school district or a municipal corporation, and, with the consent in writing of the commissioner of banking, may pledge, hypothecate, deliver or deposit securities and/or assets to guarantee deposits made by receivers of closed and/or insolvent banking institutions, and the receiver of a closed and/or insolvent banking institution, if the proceeding be not in court, with the consent in writing of the commissioner of banking, and if the proceedings be in court, with the consent in writing of the commissioner of banking and the approval of the court, may accept securities and/or assets of a banking institution to secure deposits made by such receiver."

This statute, it is true, authorizes a pledge of assets by a bank to secure deposits by receivers of closed or insolvent banks; but, as it is only a state statute, it cannot enlarge the powers granted by Congress to national banks. Spradlin v. Royal Mfg. Co., 4 Cir., 73 F.2d 776, 777. In this respect the case here differs from O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146, 151, relied upon by defendant, where the statutes held to authorize the pledge to secure deposits by the Comptroller of the Currency were federal statutes, which could properly be considered as extending the powers of the bank. Here the state statute becomes material only if the deposits for which it authorizes security to be given are embraced within the terms of the Act of June 25, 1930, 12 U.S.C.A. § 90, which provides: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

Unless the funds deposited can be brought within the definition of public money as contained in the statute quoted, therefore, the pledge relied on by defendant falls under the condemnation of the decisions of the Supreme Court in Texas & Pac. R. Co. v. Pottorff, 291 U.S. 245, 54 S. Ct. 416, 78 L.Ed. 777, and City of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787. But manifestly funds in the hands of the receiver of a state bank are not "public money of a state or any political subdivision thereof." As pointed out in the eleventh note to the Pottorff Case, 291 U.S. 245, at page 257, 54 S.Ct. 416, 419, 78 L.Ed. 777, such funds in the hands of the receiver are "private funds." We expressly so held in Griffin v. Royall, 4 Cir., 70 F.2d 103, 104, where we said: "Clearly, the deposit of the receiver of the state bank was not the deposit of 'public money of a State or any political subdivision thereof.' A deposit of the funds of an insolvent bank is a deposit of private funds. See note 11 to opinion in the case of Texas & Pac. R. Co. v. Pottorff [291 U.S. 245], 54 S.Ct. [416, at] page 419, 78 L.Ed. [777]. The pledge in question, then, is condemned by the general rule laid down by the Supreme Court; and it cannot be brought within the exception created by the statute of 1930."

The statutes of West Virginia recognize that funds of a failed bank in the hands of its receiver are in no sense public money. The article of the West Virginia Code relating to county courts and county officers, West Virginia Code 1931, 7-6-8, thus defines public moneys: "The term 'public moneys,' as used in this article, shall include all money which by law the sheriff in his capacity as such, and as treasurer of the county and districts, is authorized to collect, receive and disburse for public purposes, including State, county, districts, school districts, independent school districts and municipalities." And the very West Virginia statute here relied on draws a distinction between deposits of "the United States, state of West Virginia, a county, district, school district or a municipal corporation," on the one hand, and deposits "by receivers of closed and/or insolvent banking institutions," on the other. In the case of the former, which are deposits of public moneys, the right to secure by pledge of assets is unqualifiedly given; in the case of the latter, which involves deposit of private funds, the right to secure by pledge of assets is given only on

condition that the Commissioner of Banking give his consent in writing.

Defendant invokes the decision in Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794 in support of his position; but that case does not help him. The deposit there involved was admittedly one of public money of the state; and the point decided was that the state statute giving a general lien upon the bank's assets as security for the deposit would be enforced without the pledging of specific assets, and it was not so much as suggested that any lien could be given by pledge or otherwise for deposits of funds that were not public money. The language quoted by defendant from page 564 of 292 U.S., page 850 of 54 S.Ct. has reference to equalizing the position of national and state banks with reference to competing for deposits of public funds. It is not suggested that there was any intention on the part of Congress to permit the pledging of assets to secure other deposits, or that the definition of public funds should be stretched or expanded beyond the ordinary understanding of that term for the purpose of enabling national banks to compete with state banks for private deposits. If it be thought that public policy requires that national banks be allowed to pledge assets to secure deposits by receivers of banks, it is clear that this involves a change in the law which is a matter for the consideration of Congress and which can be readily accomplished by a simple amendment of the act of 1930.

On the second question, the position of defendant is that there was a voluntary payment of defendant's deposit under mistake of law, and that payment so made cannot be recovered. There are two answers to this; first, that the receiver of a national bank is an administrative officer of the United States and is not bound by the rule precluding the recovery of money voluntarily paid under mistake of law; second, that to permit the assets of the failed national bank to be thus applied in extinguishment of unsecured claims for deposits would contravene the federal statutes forbidding preferences to creditors and requiring the equal and ratable distribution of assets. 12 U.S.C.A. §§ 91 and 194. This matter has been fully discussed in the case of Leonard et al. v. Gage & Elliott, 4 Cir., 94 F.2d 19, this day decided, and what is there said need not be here repeated.

On the third question, no case is presented for application of the doctrine of tracing trust funds. Defendant in his official capacity has received, from the proceeds of the bonds improperly pledged, funds to which he is not legally entitled. These may have been disbursed to general creditors; but he now has on hand other funds from which restitution can be made without injustice to any one. It is well settled that in such case a court of equity will direct restitution. See Ex Parte Simmonds, 16 Q.B. 308; Standard Oil Co. v. Hawkins, 7 Cir., 74 F. 395, 402, 33 L.R.A. 739. Even if tracing be required, this has been sufficiently done where, as here, the funds in the hands of the defendant are shown to have been augmented as a result of the receipt of the proceeds of the bonds improperly pledged. There is no longer any necessity for earmarking. Knatchbull v. Hallett, 13 Ch.Div. 696; Jennings v. United States F. & G. Co., 294 U.S. 216, 223, 55 S.Ct. 394, 397, 79 L.Ed. 869, 99 A.L.R. 1248; Peters v. Bain, 133 U.S. 670, 693, 10 S.Ct. 354, 33 L.Ed. 696.

There was no error, and the decree appealed from will be affirmed.

Affirmed.