## UTTER, District Court Clerk, et al. v. ECKERSON.

### No. 7668.

Circuit Court of Appeals, Ninth Circuit.

June 17, 1935.

Chas. H. Darling, of Boise, Idaho, for appellant Utter.

Richards & Haga and Oliver O. Haga, all of Boise, Idaho, for appellant Boise Community Hotel Co.

Edwin Snow, of Boise, Idaho, for appellant First Nat. Bank.

James F. Ailshie, Jr., of Boise, Idaho, for appellant Falk.

William Healy, of Spokane, Wash., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal upon the judgment roll from a judgment in favor of J. L. Eckerson as receiver of the Boise City National Bank, a national banking association, which will be hereafter referred to as "the bank," requiring the delivery by

Stephen Utter, clerk of the District Court of Ada county, Idaho, and ex-officio auditor of that county, of certain government and municipal bonds specifically described in the judgment having a value of $23,000, but also specifically providing that the defendant is entitled to retain sufficient of said bonds to cover the amount of $242 found by the court to be public money of the state of Idaho and of the county of Ada, unless within thirty days this amount is tendered in cash to the defendant. The case was tried without a jury, and the sole question is whether the facts admitted in the pleadings or specifically found by the court sustain the decree. The bank had been duly designated by Ada county as depositary of its public funds under the depositary act of the state. The bonds in question had been pledged by the bank with the clerk to secure such deposits as the clerk made from time to time in a certain checking account in the bank. The funds deposited by the clerk in this account consisted exclusively of funds received by him in his official capacity, and the account was carried in his name as "clerk of the District Court." Included in the deposits which he had made in this account and which had not been withdrawn at the time of the insolvency of the bank was an item of $7,074.17 which had been paid to the clerk about June 1, 1931, in the case of Boise Community Hotel Company v. Comer, which was the amount of a tender made by the plaintiffs in the case to the defendants. There was also included an item of $9,650.61 which had been paid to the clerk in an action of interpleader brought by the First National Bank of Idaho against Ball and others. Both of these actions had been commenced and were pending in the District Court for the county of Ada, state of Idaho.

The First National Bank of Idaho appeared specially in this case and objected to the jurisdiction of the District Court of the United States upon the ground that the $9,650.61 deposited by it in the interpleader action in the District Court of Ada county was in the custody of that court, and, therefore, exclusive jurisdiction over that fund was in that court. A similar appearance and objection was made by the Boise Community Hotel Company with reference to its deposit in the District Court of Ada county of the amount tendered in the action brought by it in that court. Robert Falk, a defendant in the interpleader suit, also appeared and upon the same ground objected to the jurisdiction of the District Court of the United States. The clerk, the hotel company, the First National Bank, and Robert Falk appeal from the judgment rendered by the trial court in favor of the receiver of the bank.

The question is whether or not the law authorized or permitted the clerk to receive, and the bank to pledge to him, bonds belonging to it as security for the deposits made by him in the bank. The pledge of the bonds was duly authorized by the officers of the bank. The bank had over 5,790 depositors with deposits aggregating $2,365,834.57 at the time it became insolvent. The total dividends to be paid to the depositors would be substantially less than 100 per cent. The trial court stated in his findings of fact that none of the moneys deposited by the defendant in his account in the bank was public money of a state or of any political subdivision thereof, but were moneys of litigants held by or deposited with the defendant as clerk of the District Court of Ada county, Idaho, except certain docket and appearance fees due the state of Idaho, in the amount of $168, and fees due Ada county in the amount of $74, which were public moneys of the state and of said political subdivision thereof. The court also found that the moneys deposited in his account in the bank by the clerk were moneys which had been paid into his hands as clerk of the District Court and that the balance in said account at the time the bank became insolvent was $18,969.60.

In view of the findings with relation to the source of the moneys deposited by the clerk in the bank, the finding of the court, that these moneys were not public moneys, was a conclusion of law rather than one of fact, and depends upon the interpretation placed upon certain statutes of the United States and of the state of Idaho with relation to the deposit of public money in national banks which we will now consider.

Section 5153 of the Revised Statutes of the United States, as amended June 25, 1930 (46 Stat. 809, 12 USCA § 90), is as follows: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping

and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

Prior to the enactment of this law a national bank could not legally pledge its assets to secure the funds of a state or a political subdivision thereof. City of Marion v. Sneeden, 291 U. S. 262, 54 S. Ct. 421, 78 L. Ed. 787; Texas & Pac. R. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777; Lewis, Receiver v. Fidelity & Deposit Co. of Maryland, 292 U. S. 559, 54 S. Ct. 848, 78 L. Ed. 1425, 92 A. L. R. 794. The state statute relied upon by the appellants as authority for the hypothecation to the clerk of the bonds in question is as follows: "Giving security for deposit prohibited.— It shall be unlawful for any bank to pledge, mortgage or hypothecate to any depositor any of its real or personal property as security for any deposit and any pledge, mortgage or hypothecation made in violation thereof shall be unenforceable and void and any person, firm or corporation, holding or receiving any security or securities mortgaged or hypothecated, pledged or attempted to be pledged, shall, upon demand of any officer, director or stockholder of the bank or the department of finance of the state of Idaho, be required forthwith to make return thereof, and the repayment of any deposit shall not be prerequisite to the recovery of any property so unlawfully pledged, hypothecated or mortgaged; provided, however, that this provision shall not apply to any deposits of the commissioner of finance as in this act provided for or to any deposits of moneys of the United States and public funds deposited in accordance with the provisions of any depository act of this state, or the United States, or to any deposits of any bursar of any state educational institution or any state officer or any employee of the state of Idaho or of any of its boards, or officers, of moneys held incident to the duties, of any such bursar, board, officer, or employee." (Code Idaho 1932, § 25-705).

The depository act of the state referred to in this section, so far as it relates to the matter in hand, is as follows: "Depositing unit.—Every municipal and quasi municipal corporation and improvement district and school district, of every kind, character or class, now or here-

after created or organized, and authorized by law to levy taxes or special assessments, for which the county treasurer does not act as treasurer, and every county, is a depositing unit: provided, that as to any such depositing unit as herein defined the moneys of which may at any time be in the custody, charge or possession of any county treasurer or tax collector, the county shall be deemed to be the depositing unit with respect to such moneys while the same so remain in such custody, charge or possession, and also of all moneys in the custody, charge or possession, of any county treasurer or tax collector for the credit of any school district or other political subdivision of a county authorized by law to levy taxes or special assessments and not herein defined as a 'depositing unit.'" (Code Idaho 1932, § 55-104).

Section 55-105 of the Idaho Code Annotated, defines public money as "all moneys coming into the hands of any treasurer of a depositing unit," and section 55-107 defines the treasurer as the official custodian of such public moneys. It follows from these statutory provisions that the county treasurer is the official who is authorized to deposit public moneys coming into his hands in a bank and to require security therefor. The parties seem to assume, and we may do so, that, if the money in the custody of the clerk had been by him turned over to the treasurer of the county and by him deposited in the bank, the bank would have been authorized under the state law to pledge its assets as security for the repayment of this money. In view of the fact that the money in the hands of the clerk never got into the hands of the county treasurer and were not deposited by him, it is unnecessary to inquire whether the phrase "public money" as used in section 5153, U. S. Rev. St., supra, requires a narrower construction than the phrase "public money" used in the depository law of the state. We are inclined to think that in view of the evident purpose of Congress in authorizing such a pledge by a national bank to place national banks and state banks upon substantially the same footing with relation to giving security for public funds, the term "public money" in the Revised Statutes should receive the same interpretation given it by the statutes and judicial decisions of the state. This question is not involved if we sus-

tain the decision of the trial court holding that the funds in question never became public funds within the meaning of the state depository law.

■ It is clear that the state depository act does not expressly authorize the clerk to deposit money in a bank and receive security therefor. If the clerk is not so authorized by the state statute, that statute expressly prohibits the bank from giving a pledge to him as security. Section 25-705 I. C. A. That is to say, the clerk is expressly prohibited by section 25-705, supra, from exacting from the bank a pledge to him of its assets as security for deposits made by him unless he comes within the proviso of that section which permits the taking of such security by certain public officials depositing public funds. The clerk is not such an official. The trial court placed its decision in favor of the receiver of the bank upon the proposition that the funds of litigants in the state court paid to the clerk of the court did not become public moneys before they reached the hands of the county treasurer. From this decision the trial court excepted the small amount of funds which had been paid to the clerk for the state and county which had been deposited by him in the bank. No appeal was taken from this part of the decree, and we are not called upon to consider whether or not the clerk could deposit such funds with the bank and exact security therefor. It must be admitted that for certain purposes all moneys received by the county clerk in his official capacity are public moneys. It is so expressly provided by the statutes of Idaho dealing with the matter of embezzlement of public moneys (I. C. A. §§ 17-3202, 17-3203), but the question here involved is as to the meaning of that phrase in connection with the deposit of such money in banks under authority of the state and federal legislation referred to above.

■ It is clear from the foregoing that the state depository laws neither authorized the clerk to deposit the money in his hands in the bank nor permitted him to receive security therefor; consequently, the Revised Statutes of the United States, § 5153, supra, did not do so.

■ With reference to the question of jurisdiction of the District Court of the United States to entertain this action brought by the receiver of a national bank in process of liquidation, the only point advanced by appellants is that the funds here involved were in the custody of the state court wherein those funds were deposited in accordance with the law of the state. It is quite clear that these funds, having been deposited with the clerk of the court as provided by state law (sections 6-701, 6-702, 6-703, I. C. A.) were in custody of that court. The state statute required the clerk to deposit such money "with the county treasurer, by him to be held subject to the order of the court." Section 6-702, I. C. A., supra. These funds were deposited by the clerk, not with the county treasurer, as the statute requires, but with the bank, without any order from the court authorizing him so to do. If he had used these trust funds to purchase from the bank the bonds here involved, and thus converted cash in his hands as clerk of the court into bonds, these bonds undoubtedly would take the place of the money and be in custodia legis. He did not do so. The transaction in which he engaged so far as the exacting of security is concerned was expressly prohibited by both state and federal law. He acquired no title to the bonds and no lien thereon by virtue of the transaction. We are concerned in the case at bar solely with the right of the receiver to recover the bonds which are unlawfully detained by the clerk. This, according to the express provisions of the state statute, he is permitted to do without reimbursing the depositor. Section 25-705, I. C. A., supra. The state court has never had or assumed jurisdiction over these bonds. The District Court of the United States had jurisdiction in the action to recover the assets of the bank, notwithstanding the fact that the clerk secured the money thus deposited by reason of his official position.

Judgment affirmed.