## CITY OF FORT WORTH v. McCAMEY et al.

## McCAMEY et al. v. CITY OF FORT WORTH.

### No. 8566.

Circuit Court of Appeals, Fifth Circuit.
Dec. 16, 1937.

Rehearing Denied Jan. 20, 1938.

R. E. Rouer and Geo. C. Kemble, both of Fort Worth, Tex., for appellant and cross-appellee City of Fort Worth.

Preston Shirley, W. L. Dean, Stanley Boykin, A. B. Culbertson, Clay Cooke, Wm. E. Allen, Clarence E. Farmer, W. B. Pinney, and H. C. Ray, all of Fort Worth, Tex., for appellees and cross-appellants.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Texas National Bank was closed on January 31, 1930, and a receiver appointed. The receiver, under instructions from the Comptroller of the Currency, refused to sue the City of Fort Worth to recover the value of certain securities which the bank had pledged to the city to secure the deposits made by the city and which the city in February, 1930, sold for $195,540. In October, 1930, and January, 1931, two groups of depositors, separately but in behalf of all depositors, sued the city in equity, making the bank and the receiver parties. The suits as arising under the laws of the United States were removed to the federal court. They were consolidated March 18, 1932. The motion to dismiss made by the City of Fort Worth was overruled June 2, 1937. A decree against the city, but with interest from its date only, was rendered June 2, 1937. The appeal of the city asserts that the decision of the Comptroller not to sue was final, and bound the bank and its depositors, and that the depositors cannot in any case sue; that any right to recover was barred by laches and limitation; that the pledge of the securities with knowledge of the Comptroller was valid under the statutes and banking customs of Texas; and that if not valid the agreement between the bank and the city was illegal, the parties were in pari delicto, and should not be aided by the court. By cross-appeal error is assigned because interest was not allowed from the date of the conversion of the securities instead of from the date of the decree.

On July 19, 1930, the Comptroller of the Currency, in a carefully reasoned letter, instructed the receiver that the pledge of the securities was valid and to be respected,

notwithstanding decisions to the contrary effect by the Texas Commission of Appeals in Foster v. City of Longview, 26 S.W.2d 1059, and Austin, Banking Commissioner, v. Lamar County, Tex.Com.App., 26 S.W.2d 1062. That his conclusion was erroneous is established by City of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787, and Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794, decided in 1934. But it is put forward as binding on the bank, its shareholders, and depositors on the authority of such cases as Liberty National Bank v. McIntosh, Comptroller, 4 Cir., 16 F.2d 906; Kennedy v. Gibson, 8 Wall. 498, 19 L.Ed. 476; Bushnell v. Leland, 164 U.S. 684, 17 S.Ct. 209, 41 L.Ed. 598. These cases establish that there is no court review of the Comptroller's administrative finding that stockholders ought to be assessed, or touching the amount of the assessment. The statute gives him the right to determine these things. The determination does not, at least in theory, affect the ultimate results to either creditors or stockholders, since thereby neither the assets nor liabilities of the bank are changed. If the assessment proves too small, another can be made till the limit of liability is reached; and if it proves too large, the surplus will be returned to the stockholders. The case is quite different if the Comptroller decides to abandon assets of the bank or to allow a false claim against it. The National Bank Act, 12 U.S.C.A. § 194, speaks of making dividends "on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction"; and an argument is made that the Comptroller here in effect allowed as proved a secured claim of the City of Fort Worth and that his allowance is equal under the statute to an adjudication; citing National Bank v. Mechanics' National Bank, 94 U.S. 437, 24 L.Ed. 176. The cited case holds no more than that an allowed claim draws interest equally with one adjudged. It does not hold that the allowance may not be contested. In First Nat. Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 20 L.Ed. 840, the disallowance of a claim was held contestible even by suit in a state court. And see, also, Green v. Walkill Nat. Bank, 7 Hun, N.Y., 63. If the Comptroller makes a gross error either in ordering the receiver to abandon an asset or in allowing a secured or unsecured claim, we think that those interested in the assets are not to be held without remedy.

The receiver is the usual and natural representative of the bank in litigation touching its assets and liabilities. Kennedy v. Gibson, 8 Wall. 498, 19 L.Ed. 476. But the bank is not dissolved and may still sue or be sued. First Nat. Bank of Bethel v. Pahquioque Bank, supra. If it does not act to defend itself, in proper cases its creditors or stockholders may, making the bank a party as was done here. A national bank receivership is not a court receivership, but the Comptroller or his receiver may be impleaded in any court having jurisdiction. Stockholders and creditors ought not ordinarily to be allowed to prosecute litigation in the right of the bank without having sought relief at the hands of the receiver and Comptroller, and a court of equity ought to be careful not to impede the administration by entertaining frivolous cases of this sort. But the right of creditors to sue about the very matter here in contest was sustained in O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.2d 146, and even without a precedent demand for relief made on the Comptroller and receiver. A certiorari was granted on the sole point whether the suit could be maintained without such prior demand and refusal. The judgment was affirmed without decision of the point. 297 U.S. 383, 56 S.Ct. 517, 80 L.Ed. 733. In the case before us, request to sue was made both to the receiver, the Comptroller, and the bank, and each refused. See In re Chetwood, 165 U.S. 443, 17 S.Ct. 385, 41 L.Ed. 782.

The suit is not barred by limitation. No federal limitation exists, so that the state statutes apply. Article 5526 of Texas Revised Civil Statutes lays down a two-year limitation for "actions for detaining the personal property of another, and for converting such property to one's own use." This suit is not an action at law in the name of the bank or its receiver, but is a suit wherein because of a want of a legal remedy the complainants, though not having the legal right, seek in equity to be allowed to assert a right of the bank in which they are interested. It is not precisely a case of concurrent jurisdiction with courts of law, where the rule is that equity will usually adopt and apply legal limitations. Hurdle v. American Security & Trust Co., 59 App.D. C. 58, 32 F.2d 954; McNair v. Burt, 5 Cir., 68 F.2d 814. But the right to be enforced is the legal right of the bank to recover the value of the securities alleged to have been converted, and equity will adopt and apply the appropriate legal limitation, there not having been any collusion between the bank or its receiver and the city, or any concealment of the cause of action. If the right of action here asserted is the conversion by sale of the securities, the suits were both brought in time. If, as the city contends, the right of action is the possession or detention of them as a pledge which was unlawful, it arose more than two years before the suits were filed. We are of opinion that whether the pledge was valid or not, there was no conversion of the securities by merely holding them with the consent of the bank. The city could not have been sued for the value of the securities unless it refused to return them on demand or did something with them beyond keeping them safe. Mere adverse possession of property belonging to another may sometimes be treated as a conversion of it, but not possession bestowed by the owner, even though the bestowal be revocable at will. The suits here do not complain of the possession, nor of any act except the sale of the securities. The sale and the amount realized are set forth, and that amount is alleged to be the value of the securities which is sought to be recovered. The sale is the conversion sued for and it happened less than a year before the suits were filed.

It is argued that a court of equity should refuse relief because of laches, especially in not prosecuting the suit more diligently. We do not find that a defense of laches was pleaded, or that any evidence was taken or fact-finding made upon it. It does not appear precisely why the cause was delayed. The District Court denied interest because of the delay, but we agree with him that no such laches has been shown as ought to defeat all relief.

On the merits the court found that the pledge by the bank of its securities to obtain this deposit of public money was, according to the practice of banks in Texas, known to the Comptroller and acquiesced in by him. The Comptroller said as much in his decision not to sue the city, and in his testimony. There is no doubt of the good faith of the pledge and that all parties thought it valid. The case is one of great hardship, but we must hold the invalidity of the pledge settled by what was said in the cases of City of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787, and Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794. These cases assert that prior to the Act

of June 25, 1930, 12 U.S.C.A. § 90, a national bank was without power to pledge its assets to secure general deposits of public money, irrespective of what state banks could or did do. See, also, Webb v. American Surety Co., 5 Cir., 88 F.2d 171; Granzow v. Village of Lyons, 7 Cir., 89 F.2d 83; Collins v. School District, 3 Cir., 72 F.2d 339; Utter v. Eckerson, 9 Cir., 78 F.2d 307.

The deposits of the city's money were general deposits. They were to draw and did draw 3 per cent. interest, and the money was, of course, to be the property of the bank and usable by it. We are cited to no statute of Texas which forbids the officers of a municipality to deposit public money in bank. The laws providing for bonded depositories, which we assume without deciding apply to Fort Worth, are intended to enable the public deposits to earn interest and to relieve the officer of responsibility. Article 2564 of Revised Civil Statutes provides: "The city treasurer shall not be responsible for any loss of the city funds through the negligence, failure or wrongful act of such depository, but nothing in this chapter shall release said treasurer from responsibility for any loss resulting from any official misconduct on his part nor from responsibility for the said funds at any time when, for any reason, there shall be no city depository," etc. The effort to make this bank a depository failed because it gave no bond as the law required, and undertook instead to pledge securities, but the city treasurer could at his own risk deposit the money in bank. The deposit stands, though the effort at security has failed. The bank did not receive the money as a trustee ex maleficio or otherwise. The depositor stands as a general creditor. American Surety Co. v. Waggoner Nat. Bank, 5 Cir., 83 F.2d 99; Hancock County v. Hancock National Bank, 5 Cir., 67 F.2d 421; Austin v. McCary, Tex.Civ.App., 297 S.W. 1097.

It results also that there is no par delictum involved which would require the courts to wash their hands of the controversy. Lucian A. Whipple v. American Surety Co., 5 Cir., 92 F.2d 673.

There remains the question of interest prior to decree. The suit being in substance for damages for a tort of conversion, it is urged that in Texas interest from the date of conversion is recoverable of right as a part of the damages. Settegast v. Timmins, Tex.Civ.App., 6 S.W.2d 425; Watkins v. Junker, 90 Tex. 584, 40 S.W.

11. These Texas decisions, however, rest upon no statute, but only on the general principles of law, and can scarcely be said to establish any definite departure from them. A federal court, especially in an equity case, may rightly interpret such principles for itself. So doing, we note the wide difference between interest which has been contracted for and is thus a matter of fixed right, and that which is remedial, allowed to do justice, and in a measure discretionary. Delay in presenting or prosecuting the claim is a frequently applied reason for denying remedial interest. In Redfield v. Ystalyfera Iron Co., 110 U.S. 174, 3 S.Ct. 570, 572, 28 L.Ed. 109, we read: "Where it [interest] is reserved expressly in the contract or is implied by the nature of the promise, it becomes part of the debt, and is recoverable as of right; but when it is given as damages it is often matter of discretion. * * * But where interest is recoverable, not as part of the contract, but by way of damages, if the plaintiff has been guilty of laches in unreasonably delaying the prosecution of his claim, it may be properly withheld." The delay which defeated interest occurred while the suit was pending. In Redfield v. Bartels, 139 U.S. 694, 11 S.Ct. 683, 35 L.Ed. 310, the same thing was said and interest denied up to the time of a trial amendment. The principle was applied against the United States in United States v. Sanborn, 135 U.S. 271, 10 S.Ct. 812, 34 L.Ed. 112, and interest prior to suit refused where there had been long delay in suing. In the case before us the matter was at issue and ready for trial in March, 1932, as the order of consolidation states. Nothing substantial was done to get it tried till three years later. A delay of two years after that is attributed by the judge to himself. But in a review of the whole situation, including the fact that the bank owed the city more than the city owed the bank, though not available as an offset, he determined that exercising a proper discretion he should deny interest. In a case of conversion of property by sale, the owner may ratify the sale, waiving the tort, and sue for the money realized as money received for his use, being ordinarily entitled to interest from the date of its receipt by the seller. Or he may elect to reclaim the property from the purchaser; or to sue the seller for its value; and in the last stated event he may ordinarily claim the highest value he can establish up to the time of the trial, or the value at the time of the sale with interest from that date. The present suits claimed the value

of the securities at the time of the sale, alleging that value to be "approximately $218,540," the amount for which they were sold. Interest was not expressly sued for. The finding was that they were sold for $195,348, and that this sum was their value. The damages were thus unliquidated and in dispute on the face of the pleadings. Under all the circumstances, we cannot say the court abused its discretion in refusing to allow interest prior to decree in this case. St. Louis S. W. Ry. Co. v. Seale & Jones, Tex.Com. App., 267 S.W. 676. A discretion in the matter is not denied by Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265.

The judgment is in all respects affirmed.

## On Motions for Rehearing.

### PER CURIAM.

The motion for rehearing of City of Fort Worth contends that the case of McNair v. Knott, 58 S.Ct. 245, —— L.Ed. ——, just decided, holds that the Act of June 25, 1930, 12 U.S.C.A. § 90, validated and cured ultra vires pledges by a national bank made to secure deposits of public funds if state banks could make such, although the bank had failed and was still in receivership before the act was passed. We do not so understand the decision. No such situation was before the court. On the appointment of a receiver the rights of everyone concerned become fixed.

The motion is denied.

On the motion for rehearing made by the appellees, if the procedure they propose to supplement the record in order to prove that the fault of the delay in bringing the case to trial was not theirs be permissible, no change should be made in our judgment. If it be assumed that the delay was not the special fault of the appellees, it remains true that a great delay has happened and an oppressive amount of interest, nearly $60,000, is demanded; that the right of the bank sought to be asserted is not a contract express or implied to pay money with interest, but to recover damages for a conversion of personal property of the bank; that the act of conversion was done in good faith and was not regarded by the bank or its receiver as a conversion and they refused to sue for it; that the bank owes money to the city equal to the value of the property converted which it would not have received but for the pledge of the converted property, rendering it a great hardship to force the city to pay interest to the bank while the bank cannot pay even the principal of what it owes the city. According to the Texas Commission of Appeals, St. Louis & S. W. Ry. Co. v. Seale & Jones, 267 S.W. 676, and like authority exists elsewhere, interest to increase damages is not a right, but its allowance is discretionary in cases of tort. Yet further the appellees had to appeal to equity to be heard at all, and a court of equity will not lend itself to what is inequitable. Irrespective of whose was the fault of the delay, we are of opinion that the chancellor was warranted in refusing to increase the damages by an allowance of interest.

This motion for rehearing also is denied.