**TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DIST. NO. I v. MAXWELL et al.**

**MAXWELL et al. v. TARRANT COUNTY WATER CONTROL AND IMPROVEMENT DIST. NO. I.**

No. 9140.

Circuit Court of Appeals, Fifth Circuit.

Jan. 30, 1940.

Rehearing Denied Feb. 23, 1940.

Sidney L. Samuels, Ireland Hampton, and William R. Watkins, all of Fort Worth, Tex., for appellant and cross-appellee.

G. R. Lipscomb, W. B. Pinney, Wm. E. Allen, Clarence E. Farmer, Clay Cooke, Stanley Boykin, and L. L. Gambill, all of Fort Worth, Tex., for appellees and cross-appellant.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Suits were filed by J. C. Maxwell and others on behalf of themselves and approximately 8,000 other general depositors of the now defunct Texas National Bank

of Fort Worth, Texas. The plaintiffs sought to recover from Tarrant County Water Control and Improvement District Number One the proceeds of sales of certain securities alleged to have been pledged by Texas National Bank to secure deposits of the Water Control District. The suits were consolidated, a hearing was had, and the court found that the District had made a valid deposit of funds and that the alleged pledge of securities was invalid. Judgment was entered for the plaintiffs and the Water Control District has appealed.

Tarrant County Water Control and Improvement District Number One is a corporate governmental agency in the State of Texas. In October, 1927, the District was authorized by a vote of the people to issue up to $6,500,000 in bonds; the proceeds from their sales to be used to build two flood regulation dams on the West Fork of the Trinity River and to increase the capacity of the levee system along the river in the City of Fort Worth.

In April, 1929, the Texas National Bank was selected and designated as the official depository of the public funds belonging to the District, and on April 24th the bank and the District entered into a contract in reference to the deposit and securing of funds of the District. On April 29, 1929, the bank delivered in pledge to the District a $10,000 United States bond, and thereafter on May 1, 1929, the District made a deposit of $9,256.27.

In July, 1929, the District completed a sale of $2,000,000 par value of its construction bonds. It received in payment for these bonds the sum of $1,951,111.11 evidenced by cashier's checks of the Fort Worth National Bank. About August 1, 1929, the Chairman of the Finance Committee of the District notified the Texas National Bank that the District intended to make a deposit of these funds and that it wanted the bank to arrange for a pledge of securities to protect the deposit as provided by the contract. The Chairman of the Board of Texas National Bank notified the District that the bank did not have the securities or the available money to purchase them and that the bank would be unable to live up to its contract unless the District would cooperate in the purchase of securities. The District agreed to cooperate, and the bank ordered securities from third parties. On August 6, 1929, the securities so ordered were in the possession of the Collection Department of the Fort Worth National Bank, a bank having no connection with Texas National Bank.

The securities held by the Fort Worth National Bank were of a par value of $1,951,000, and their agreed purchase price plus accrued interest made their total delivery price $1,961,898.87.

Representatives of the District and the Texas National Bank met at the Fort Worth National Bank. The securities were checked and approved, and at the request of the Texas National Bank the Finance Officer of the Water Control District indorsed the District's cashier's checks for $1,951,111.11 over to the Fort Worth National Bank in payment of the purchase price of the securities. The balance of the purchase price, $10,787.76, was paid by the Texas National Bank. The Finance Officer of the District took immediate possession of the securities and placed them in the Water Control District's safe in the vault of the Fort Worth National Bank. The Texas National Bank then entered a credit of $1,951,111.11 in the deposit book of the District and gave the District a deposit slip for this amount. On August 6, 1929, prior to this transaction, the District had a bank balance of $6,945.11 and held the $10,000 United States bond pledged to it in April. After the transaction of August 6th the District stood credited with a balance of $1,-958,056.22, and held in its possession securities of a par value of $1,961,000.

From time to time the District drew checks on the bank. The bank paid the checks and at intervals the District gave certain of the securities to the bank to take care of the checks so paid. When the bank closed and its affairs were taken over by the United States Comptroller on January 31, 1930, the individual ledger of the bank showed a credit of $1,372,-968.83 in favor of the District, and the District held in its possession securities of a par value of $1,399,000. After the bank closed the District drew its checks for the full amount shown by the books to be due to it. Payment was refused and the District proceeded to sell the securities. The sale was completed on February 26, 1930. The securities were sold for their full market value and the District realized proceeds of $1,410,730.94 from their sale. From this amount the District deducted the cost of sales, ap-

plied $1,372,968.83 to restoring the funds of the District, and paid the balance of $34,855.48 to the receiver of the bank.

When the Texas National Bank failed there were approximately 8,000 unsecured depositors with credits subject to check. Prior to the filing of this suit the plaintiffs, appellees, on behalf of all general depositors requested the receiver and the Comptroller of the Currency to bring suit against the District to recover the proceeds of the sale of securities. They contended then as they do now that the District was a general depositor of the bank; that the securities held by the District were held under a void pledge; and that the District stood as a general creditor along with other unsecured depositors of the bank. The Comptroller and the receiver refused to sue the District for conversion of the securities and thereupon this class suit was filed by the plaintiffs.

The appellees, plaintiffs below, urge in support of the judgment that the District made and the bank accepted a valid deposit of funds; that all securities sold by the District after the bank's failure had been pledged by the bank to secure the deposit of funds; and that the pledge was unlawful and void under the public policy and laws of the United States, citing City of Fort Worth v. McCamey, 5 Cir., 93 F.2d 964; Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L. Ed. 777; City of Marion, Ill., v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787; Lewis v. Fidelity & Deposit Co., 292 U. S. 559, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A. L.R. 794.

The appellees contend that City of Fort Worth v. McCamey, 5 Cir., 93 F.2d 964, is a companion case to this litigation and that it is decisive of the questions presented here. We do not think so. The same bank is involved in this case but the facts here are much different from the facts in the McCamey case. There the deposit and pledge was made. Here the District did not deposit one cent of its fund of $1,951,111.11. It bought securities and placed them in its strong box in the Fort Worth National Bank and thereafter gave checks on the Texas National Bank and paid these checks with securities from its strong box. After a study of the record in this case we think it clear that the sum of $1,951,111.11 was never deposited in the Texas National Bank. The bank at no time had possession or control of the fund.

■ While the Texas National Bank entered a deposit credit of $1,951,111.11 on the deposit book of the District and gave it a deposit slip for this amount and paid interest on its book balance, the deposit was wholly fiction. The transaction did not possess the true characteristics of a general deposit, 9 C.J.S., Banks and Banking, § 273—General Deposits, p. 556. The entire fund was used to purchase the securities held by the Fort Worth National Bank. The Water Control District paid the money direct to the Fort Worth National Bank which in turn delivered the securities to the District. The money and securities were never free assets of Texas National Bank.

■ The District and the bank by the contract of April, 1929, agreed upon a system of deposit and pledge and it is apparent that they intended to carry out this agreement, but when the District notified the bank of its intention to deposit the funds the bank was unable to live up to its contract. The transaction of August 6, 1929, was not the one contemplated by the contract of April, 1929. Sweeping aside form and fiction we find that the District purchased the securities and arranged for the bank to honor and pay its checks, and agreed that from time to time certain of the securities would be turned over to the bank to reimburse it for all amounts so paid. Equity is interested in substance and not in form and what actually happened must govern the decision in this case. Wilkinson v. McKimmie, 229 U.S. 590, 33 S.Ct. 879, 57 L.Ed. 1342; Union Pacific R. Co. v. Chicago, etc., R. Co., 163 U.S. 564, 565, 582, 16 S.Ct. 1173, 41 L.Ed. 265; Cf. Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288.

The bank was in no wise injured by the transaction as finally carried out; in fact it received a substantial profit. It would be manifestly unjust and inequitable to allow the assets of the bank to be increased by requiring the District to account for proceeds of the sale of securities it purchased with $1,951,111.11 of its own funds. The relationship of debtor and creditor was never established between the bank and the District in relation to the fund of $1,951,111.11, and the court erred in entering judgment against the District for the proceeds derived from the sale of securities purchased with this fund.

The $10,000 United States bond pledged by the bank in April, 1929, belonged to the bank, and no funds of the District were used in its purchase. The District must account for the proceeds of the sale of this bond if it has not already done so. City of Fort Worth v. McCamey, 5 Cir., 93 F.2d 964. The $10,776.84 put up by Texas National Bank to pay the balance of the purchase price of the other securities appears to have been amply taken care of by surrender of securities prior to the failure of the bank or by payment to the receiver of the excess of $34,855.48 realized from the sale of securities, and we need not consider this further.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion. This decision makes consideration of the cross-appeal unnecessary and the same is hereby dismissed.

Reversed and remanded.