## ADAMS v. STANLEY.
### No. 13267.

Court of Civil Appeals of Texas.
Fort Worth.
Nov. 22, 1935.

Rehearing Denied Dec. 20, 1935.

Buck & Lattimore, of Fort Worth, for appellant.

Slay & Simon and Richard U. Simon, all of Fort Worth, for appellee.

MARTIN, Justice.

On October 5, 1932, John C. Stanley filed suit against W. T. Adams in the Sixty-Seventh district court of Tarrant county, alleging that in the fall of, 1928 he contracted with defendant Adams to sell, as· agent, a large tract of land in the Rio Grande Valley, upon the sale of which it was agreed that he should receive a commission of 2 per cent.; that he produced a purchaser and introduced him to Adams; that after some negotiations Adams declined to trade with such purchaser and informed plaintiff that the trade .was "off," but that afterward on or about the 15th of September, 1930, Adams made an independent trade with the same purchaser, thereby becoming indebted to the plaintiff for 2 per cent. of the consideration paid Adãms in such trade.

He alleged also that if mistaken in the 2 per cent. contract, nevertheless, by reason of his service in furnishing the purchaser and introducing him to the defendant, he would be entitled to the usual and customary commission paid to real estate agents for such service, which he alleged to be 2½ per cent. of the consideration paid.

The defendant answered by general exception and general denial and pleaded the two years' statute of limitation in bar (Vernon's Ann.Civ.St. art. 5526).

With issue thus joined, after overruling the defendant's exception, the cause was tried to a jury upon special issues, which, with the answers of the jury thereto, are as follows:

"For your guidance in answering the questions hereinafter propounded to you, the Court gives you the following definitions:

" 'Ordinary care' as that term is used in this charge, means the exercise of that degree of care and prudence that a person of reasonable care and prudence would exercise under the same or similar circumstances.

" 'Ordinary diligence,' as that term is used in this charge, means that degree of diligence that a person of ordinary care and prudence would exercise under the same or similar circumstances.

"Bearing in mind the above and foregoing definitions and instructions, you will answer the following questions:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that in the month of February, 1929, the defendant W. T. Adams agreed to pay plaintiff John C. Stanley two per cent. commission to procure a purchaser for the 10,000 acres of land involved herein?

"Answer: Yes.

"Special Issue No. 2:

"If you have answered No. 1 'no,' then you need not answer this question, but if 'yes,' then answer:

"Do you find from a preponderance of the evidence that subsequent to such agreement, if any you have found, that the defendant W. T. Adams negotiated with W. E. Bass for the sale or exchange of the 10,000 acres of land in question?

"Answer: No.

"Special Issue No. 3:

"If you have answered the above question 'no,' then you need not answer this question, but if 'yes,' then answer:

"Do you find from a preponderance of the evidence that such negotiations, if any you have found in answer to No. 3 above, were the result of the efforts of the plaintiff, John C. Stanley?

"Answer: ———

"Special Issue No. 4:

"If you have answered the above question No. 3 'no,' then you need not answer this question, but if 'yes,' then answer:

"Do you find from a preponderance of the evidence that the plaintiff J. C. Stanley was the procuring cause of the sale by the defendant W. T. Adams to the Farm & Home Savings & Loan Association on or about September 15, 1930?

"In connection with the foregoing issue, you are instructed that by the term 'procuring cause,' is meant that cause which, in a natural and continued sequence, unbroken by any new independent intervening cause, produces the event, even though the event as finally produced may have been contributed to and finally consummated by other contributing causes.

"Answer: Yes.

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that the plaintiff Stanley had knowledge of the sale of September 15, 1930, prior to October 6, 1930?

"Answer: No.

"Special Issue No. 6.

"If you have answered the above question No. 5 'no,' then you need not answer this question, but if 'yes,' then answer:

"Do you find from a preponderance of the evidence that the plaintiff Stanley by the use of ordinary diligence on his part, as that term has been defined to you above, could have learned of the sale of September 15, 1930, prior to October 6, 1930?

"Answer: ———

"Special Issue No. 7:

"Do you find from a preponderance of the evidence that prior to October 5, 1930, the plaintiff had notice of the sale of September 15, 1930?

"Answer: No.

"Special Issue No. 8:

"If you have answered the above issue No. 7 'no,' then you need not answer this question, but if 'yes' then answer this question:

"Do you find from a preponderance of the evidence that such notice, if any you have found as inquired about in No. 7 above, was sufficient to put a person of ordinary care and prudence, as that term is defined for you above, upon inquiry as to such sale?

"Answer: ———

"Special Issue No. 9:

"If you have answered the above question No. 8 'no,' then you need not answer this question, but if 'yes,' then answer this question:

"Do you find from a preponderance of the evidence that the plaintiff Stanley after having such notice, if any you have found, used all means available to him in the exercise of ordinary diligence on his part to discover prior to October 6, 1930, that such sale had been consummated?

"Answer: Yes.

"Special Issue No. 10:

"Do you find from a preponderance of the evidence that the defendant W. T. Adams, subsequent to the last day of Feb-

731

ruary, 1929, represented to the plaintiff, J. C. Stanley, that the deal with the Farm & Home Savings & Loan Association had fallen through?

"Answer: Yes.

"Special Issue No. 11:

"If you have answered No. 10 'no,' then you need not answer this question, but if 'yes,' then answer:

"Do you find from a preponderance of the evidence that the representation, if any you have found in answer to issue No. 10 above, was made with the intent of having J. C. Stanley cease any further efforts to consummate a sale to the Farm & Home Savings & Loan Association?

"Answer: Yes.

"Special Issue No. 12:

"If you have answered No. 10 'no,' then you need not answer this question, but if 'yes,' then answer:

"Do you find from a preponderance of the evidence that the plaintiff J. C. Stanley relied upon the representations, if any you have found, as inquired about in Issue No. 10 above?

"Answer: Yes.

"Special Issue No. 13:

"What do you find from a preponderance of the evidence was the actual market value of the property conveyed to W. T. Adams by the Farm & Home Savings & Loan Association in exchange for the 10,000 acres in question, exclusive of the cash payment and the notes mentioned in the evidence?

"Answer in dollars and cents, as you find the facts to be.

"Answer: $505,000.00."

Defendant's requested special issue No. 1:

"Did the plaintiff perform the necessary services in furthering the sale of defendant's tract of land, without fault or hindrance on the part of defendant?

"Answer: No."

Defendant's requested special issue No 2:

"Did the plaintiff, after negotiations had started between plaintiff and defendant to sell defendant's land, act in such a manner or by his failure to promote the sale that was finally consummated, lead defendant to believe that plaintiff had abandoned his efforts in defendant's behalf, without any fault on the part of defendant?

"Answer: No."

Defendant's requested special issue No. 3:

"Was there such a break in the chain of events, from the time of the first listing of the property with plaintiff down to the final closing of the sale and exchange of properties that was effected, by reason of lapse of time, which led defendant to believe that plaintiff had abandoned same?

"Answer: No."

Whereupon the trial court entered judgment for the plaintiff for $25,024, and defendant, after motion for a new trial was overruled by the court, perfected his appeal to this court.

We designate the parties as in the trial court.

■ The assignments of error are numerous, and we feel justified in not noticing all of them. Perhaps half of those briefed by appellant present in different forms the defense of limitation. We find that the deeds containing the first public notice of the sale finally consummated between Adams and the Farm and Home Savings & Loan Association, purchaser of the property, were filed for record in Tarrant and Hidalgo counties on October 6, 1930, and this suit, as above stated, was filed on October 5, 1932, and while the plaintiff below admits that he heard rumors of some such trade before that time, we believe the constructive notice of the record to be the first knowledge of the trade that can be legally attributed to him. We therefore feel constrained to hold that the suit was brought within the statute and overrule the assignments relating thereto.

■ A very serious question is presented by appellant's assignment of error No. 7, which complains of the definition given by the court of "procuring cause" in connection with special issue No. 4. The transcript discloses that this definition was objected to by defendant before submission to the jury and was properly assigned as error in motion for a new trial. The complaint is that it should have contained proper words indicating to the jury that in order to constitute a procuring cause the cause must be such that the trade would not have been made but for such cause; in other words, in order to find that plaintiff was the procuring cause they should be told that they must believe from a preponderance of the evi-

dence that without his services the deal would not have been made. This phase of the question was also presented by defendant in his special requested issue No. 3 in the following words:

"This cause will be submitted to you upon special issues, which you will answer from a preponderance of the evidence, observing the definitions and instructions herein given you.

"By procuring cause as that term is used in this charge is meant that cause which in a natural and continued sequence, unless broken by any new, independent intervening cause, produces the event without which it would not have occurred."

And also in defendant's requested special issue No. 4:

"Did intervening broker or brokers, other than plaintiff, act as the procuring cause in bringing the defendant and Farm and Home Savings & Loan Association together on the sale and exchange of properties that was finally consummated between them."

In our opinion this element of the defense should have been given to the jury in some appropriate language. Under the peculiar facts of the case, it was a fundamental question whether the plaintiff was "the procuring cause" of the trade. He admittedly did nothing except to introduce the parties and take part in some negotiations which came to naught. He, it is true, offered to go further and do what he could to further other and further negotiations, but was not called upon to do so. Shortly after he had introduced the defendant to Mr. Bass, Texas agent of the purchaser, the plaintiff left for Miami, Fla., and was out of the state for some months. Bass testified that the same property had been submitted to him several times, by various agents, before the plaintiff ever met him, and that he knew Adams personally before the introduction by the plaintiff and had considered the purchase of his property before that time.

The witness Hoggard testified that he had been working on the deal for years, beginning in 1928, and continued to work on it until it was finally consummated in September, 1930. He testified that he made many trips back and forth from Harlingen to Fort Worth trying to bring the parties together and to Missouri before the trade was finally closed; that the trade finally made was very different from the one contemplated in the original listing with the plaintiff. His original listing of the property with the plaintiff was at a price of $300 per acre, $500,000 to be paid in cash and the balance in one, two, and three years. The sale as made was for $350,000 cash and certain properties in the city of Fort Worth and at a somewhat reduced sale price per acre. We believe the definition given by the court of "procuring cause" may have been misleading to the jury, and, as it was promptly objected to and excepted to and properly brought forward in the appeal record, we must sustain the assignment.

We also are of the opinion that special requested issue No. 4, quoted above, should have been given to the jury. It presented one of the affirmative defenses of the defendant. He claimed that the witness Hoggard was the "procuring cause" of the trade actually made, if any agent was, and was in our judgment entitled to a finding by the jury whether he or any other intervening agency was the procuring cause of the sale that was actually made. Goodwin v. Gunter, 109 Tex. 56, 185 S.W. 295, 195 S.W. 848; Settegast v. Timmins (Tex.Civ.App.) 6 S.W. (2d) 425; Drossos v. Giles (Tex.Civ.App.) 288 S.W. 275.

In view of another trial of the case, we suggest also that the special issue requested by defendant presenting the question of abandonment should have been given by the trial court. The evidence, in our opinion, raises the issue, and, being one of the defenses, we think it should have been given to the jury.

Other questions presented in the appeal may not occur in a retrial of the case, so we pretermit what might be useless discussion of them.

For the errors indicated above, the judgment of the trial court is reversed and here remanded for a new trial.